Good morning, Your Honors. May it please the Court, Martin Fontes for the petitioner, Francisco Garcia-Mendez. I'd like to reserve three minutes for rebuttal. In this case, the issue is whether the petitioner can file a waiver pursuant to INA 212H, which is U.S. Code 1182H, in conjunction with a special rule cancellation of removal for battered spouses. More specifically, petitioner in this case asserts that as a special rule cancellation of removal under VAWA applicant, he is a VAWA self-petitioner. I'm not, I keep hanging up on whether 212H is available here because it says for applying for a visa for admission to the U.S. or for adjustment of status, and I think the relevant category here is for admission, and he's not applying for admission. He's already here. Well, Judge, we would assert the relevant isn't necessarily for admission, rather for adjustment of status, and the title of special rule cancellation of removal for battered spouses is cancellation of removal and adjustment of status. It's indicated in the title, and it's also indicated in the section 2, subsection capital A. It says the attorney general may cancel the removal of and adjust the status of an alien lawfully admitted for permanent residence. That's at the section. So, and what the court's referring to there is in regard to 212H subsection 2. That question, I guess, wasn't really reached by the court or by the board. They focused more on our assertion that he is a VAWA self-petitioner, which comes in under 212H1C, because you can assert it under 212H1A, B, or C. We chose... You, aren't you just conflating VAWA self-petitioner and special rule cancellation applicant? I mean, what is, what's the basis beyond just saying I am a VAWA self-petitioner? I don't understand why you can contend that your client is. Well, Judge, when you look at the statute that defines the VAWA self-petitioner, we feel there's some ambiguity there. And that's a 101A51 U.S. code. So which provision does your client fit under? A, subsection A. And they do enumerate seven different grounds. We're asserting under A, which reads an alien who qualifies for relief under Clause 3, 4, or 7 of Section 204A1A. Now, the ambiguity comes at the top when it says who qualifies for relief. Congress could have chose to use the language who has been granted relief under such section, but it chose to use the words who qualifies for relief under such section. Now, in this case, petitioner... Why does he qualify for relief? Well, he filed an I-360 with the U.S. CIS. It remained pending for almost three years. During that time period, the U.S. CIS issued approximately seven notices which held that he did establish a prima facie case of eligibility. Didn't they ultimately find that it was a sham marriage and that he wasn't qualified? Well, they didn't. I don't agree with that completely. They did deny the application, and they did find he had been a victim of battery and extreme cruelty by his U.S. citizen spouse. What they found was he could not establish that he had resided with his spouse and that he could not be established that he entered into the marriage in good faith. But they never... Therefore, isn't that tantamount to concluding that he doesn't qualify? Well, it's a denial of the application, but when we're looking at the prima facie finding, we look to the regulations, and that would be CFR 204.2C. Now, that regulation specifically gives guidance for applicants applying under section 204A1A subsection 3, which is the same ground specifically listed in 101A51 subsection A. Now, in C6 of the regulation, it says a prima facie case is established only if petitioner submits a completed form I-360 and other evidence supporting all cases. In this case, we have someone who filed an I-360 and a prima facie eligibility finding was made. Now, if 101A51 had indicated he need to be granted relief and it was ultimately denied, I think we have a problem. But I think here he's made a case that he does qualify for relief. He's made a case to qualify, but that case did not persuade the authority responsible for making the adjudication. So why do we say we're entitled to second-guess that adjudication? Well, because we're looking at the same group of victims. We're looking at battered spouses. We're looking at people who have been subjected to battery or extreme cruelty by their U.S. citizen or LPR spouses. Now, we're asserting that the main difference between a special rule cancellation... I don't hear an answer to my question there. The question is, it's already been adjudicated, and the authority that is responsible for adjudicating it says he doesn't qualify. Where do we get off second-guessing that? You're trying to translate qualify into something other than adjudicated, but for our purposes, I'm not sure why they're any different. Well, we're not asking the court to second-guess the USCIS's decision. But you're asking us to say he's qualified even though he was adjudicated not eligible for. That's correct, Your Honor. Well, how isn't that asking us to second-guess? Well, we're not looking for you to revisit because a special rule cancellation or removal qualifications are a little bit different. But if they're different, then that isn't, I think, a license to then say, so we can designate you as a VAWA self-petitioner because it's trying to protect a similar population, but then it's a little different, so then we get the benefit of the special rule cancellation. I mean, you're conflating these two concepts, it seems to me. Well, victims of domestic violence are not required to choose either, and by the statutes, don't have to choose. That's right, but just because they make a claim to be eligible for one doesn't automatically make them eligible for another. Each of the routes has its separate set of standards. So why is it that we should accept your argument that he's a proper VAWA self-petitioner if, in fact, he doesn't appear to fall within any of the subsections of the statute that defines who a self-petitioner is? We're arguing and we're asserting that essentially they're the same, and we look at a few different things to answer that. Number one, as we pointed out in the regulation 204.2c6 regarding the prima facie eligibility, we also look to the Ninth Circuit's holding, finding in the analysis that was held. That was a 2011 case. In that case, the alien was a special rule cancellation and removal applicant. They were looking for the definition and guidance as to what battery and extreme cruelty meant. In doing so, the Ninth Circuit specifically looked at 8 CFR 204.2c and e. Now, those regulations are specifically going to the same section that's under 201A51 subsection A, which is an applicant under 204A1A subsection 3. So the court is already looking to the same sections to give definitions to the special rule cancellation of removal applicant as to VAWA self- petitioners. In addition, we asked the court, we're looking at the intent and the goals of Congress when enacting VAWA. Both of these provisions were enacted under VAWA in 1994. Now, the subsection we're looking at for the definition of a VAWA self-petitioner was implemented in 2005. Now, you have another argument if the VAWA argument fails, correct? And you're saying that even if your client's not a VAWA self-petitioner, he can nonetheless seek special rule cancellation 212H waiver, right? Yes, that's correct. But then you have the YNP case. That's correct. So why don't you address for us why YNP isn't a problem on that second avenue? We believe there were various issues with YNP. They were saying YNP says a special rule cancellation or removal is not an impermissible interpretation of the statute because on the 212H, they're adding at the end, and if you look at section 212H2, at the end where it says or adjustment of status period, they're saying adjustment of status only for 245 adjustment of status. And that's where they've gone further than the statute requires. Now, 212H was enacted prior to the special rule cancellation for battered spouses, and Congress chose to title it cancellation or removal and adjustment of status. They didn't want a 212H waiver to be included there for the adjustment of status. They could have given it a different title. And I think... But aren't you almost acknowledging that there's some ambiguity here? And then when the BIA makes its determination construing it, don't we have to provide some deference to their conclusion because it's an ambiguous statute? Well, not if it's an impermissible interpretation of the statute, and we believe it clearly is. One thing they looked at with the board, they had the previous decision in Bustamante, which didn't allow for a 212H waiver with a regular cancellation removal application, which had various language noting the difference between the regular cancellation removal, which said... which indicated that an alien could not be convicted of grounds in 212A2, and the difference between the special rule, which indicated they could not be convicted. But when the YNP decision came out, it seemed they were setting it up that that could be because you're only looking at the inadmissibility ground, which is waived with a 212H waiver. YNP kind of turned around on that and dismissed all the language they had set up in Bustamante. And when the court said, what's the difference in the language in the two, their only answer was simply that they couldn't explain why there was different language. So they really had no reasoning as to the different language in both sections. They added a separate requirement for adjustment of status and limited it to only applications under 245, which we feel is impermissible. And so there were a few different rules. The other point that YNP made was that there was a specific waiver for special rule cancellation or removal applicants, the domestic violence waiver. However, we feel their analysis and holding on that ground is also misplaced. The domestic violence waiver goes specifically to 237A2E1. And what Congress was looking for in giving the special waiver for special rule battered spouses applicants was if they were victims of dimuse and at some point they had to turn around and in self-defense, they commit an act of domestic violence and are convicted for it, they would be held to be removable under 237A2E. That's a specific waiver, but that in no way nullifies that the language of the special rule calls for inadmissibility under 212-2 and there's already a waiver set for inadmissibility in 212-H. And so just because one is listed and the Congress didn't need to be redundant and go and repeat that a waiver of inadmissibility is available for adjustment of status applications, that we feel is very clear in the Do you want to save the balance of your time for rebuttal? Yes, we would, Your Honor. You may, and we'll hear from the Attorney General. May it please the court, Meadow Irick Platt on behalf of the United States Attorney General. Congress provided to, I'm rather Congress legislated to provide for various remedies for victims of domestic violence. While some of these remedies share the same characteristics, they are not the same thing. In this case, the petitioner confuses two distinct avenues available to victims of domestic violence. On one hand, special rule cancellation of removal and on the other hand, a VAWA visa self-petition. I'd like to explain the difference between the two and why the board reasonably interpreted a waiver of inadmissibility under section 212-H as unavailable in the cancellation context. At issue here is special rule cancellation of removal, which is under INA section 240-AB2. Special rule cancellation of removal is a defensive application that an applicant who is already in removal proceedings files with the immigration court. The alien automatically becomes a lawful permanent resident. In contrast, a VAWA self-petition is an affirmative way for an abused alien to obtain a visa on his or her own right rather than having to go through a third party like a business or a family member. The alien applies for the visa through the Department of Homeland Security, not before the immigration court. Congress has explicitly said that an alien in this context can use a section 212-H waiver of inadmissibility. That's in section 212-H1C. Congress explicitly defined what a VAWA self-petitioner is and an applicant for special rule cancellation of removal is no hurt in the definition. In this case, Mr. Garcia's argument is that a VAWA self-petitioner is the same thing as a special rule cancellation of removal applicant. They are not the same thing under an unambiguous reading of the Immigration and Nationality Act. Therefore, Congress has plain language controls and the court should reject his arguments. Why? And I say that not in terms of, let me put it a different way. I've gone through the BIA's decision. I've struggled with these kind of issues before, limitations on the agency's own authority under 212 to give waivers in some instances. And the thing that's up and the analysis appears driven mostly by the interpretation of the language of the statute and the statute does control. But I've struggled to figure out why some of these distinctions are drawn. And this is one of those cases where I'm trying to figure out why it is that the person who purports to be a victim of domestic violence is treated differently in some circumstances than in others. I don't know if you have an answer to that sense. Then understanding the deference we have to the agency's interpretation of the statute, if there are interpretations that would make more sense, why don't we say those other interpretations are the better ways to read the law? Your Honor, if I'm understanding your question correctly, you're referring to the sort of cognizability of matter of YMP in general, not Mr. Garcia's specific opinion. That's correct. Is that correct? I need to get my arms around that decision in order to figure out how it properly applies in a particular case. Your Honor, I, too, read that decision about five times before I even began to understand. And I'm not sure if I still understand, but I can do my best here. I don't know. The government doesn't know why there are different requirements. One thing that's important to keep in mind is that... That the government's making the different requirements. You've got to justify them. We have some cases where we've said law applying to inadmissibility applies to removal or vice versa. I have a vague recollection of one in the 90s, Cabasug or Casabougue or something like that. I'm sorry, Your Honor. I'm not familiar with that case. We said we couldn't see why they'd be different, so we treated them as the same. I'm happy to research that case. Well, I'm not asking you to research the case. I'm just showing you why I, too, am interested in what Judge Clifton has asked. One thing that comes to mind, I did research the legislative history of these provisions and I came up with nothing. The board did explain a number of reasons that they believed were reasons why it should be treated differently. At the offset, I just wanted to make clear, I think it's been clear through arguments already this morning, but I just wanted to both of these avenues. It's not that one is available to one type or class of person and the other is not available to them. They can pursue them concurrently or separately, so it's not that they're foreclosed from them. But your point, if I'm understanding it correctly, is that while they can pursue the two avenues by pursuing one, they don't automatically qualify for the other. That's correct. They don't automatically. They're two distinct and separate avenues, but they can certainly pursue them at the same time. They're not mutually exclusive. Exactly. One thing that comes to mind is perhaps with respect to whether a 212H waiver is available in the context of adjustment of status under Section 245. Perhaps Congress, and I'm just hypothesizing because there's nothing in the legislative history, perhaps Congress wanted to encourage victims of domestic violence to come forward because adjustment of status and a VAWA self-petition is an affirmative application. An applicant doesn't have to be in a removal proceedings. The alien can go forward and pursue the application themselves. So perhaps they were encouraging applicants to come forward and leave these domestic violence situations instead of waiting until they were, if you will, caught by immigration authorities. And then if they are, then the defensive application of special rule cancellation is available as well. Again... That's a pretty good one. It's just a thought. I don't know. The board did explain a number of reasons that they why a 212H waiver is not available in special rule cancellation. One is that they said, with respect to the title, it's called cancellation of removal and adjustment of status. It does have the term adjustment of status in it, but that's only half of the title. It's not the whole title. And to look at only half of the title is a misreading of the statute. And in fact, when Congress cross-references this, it uses the whole title. It doesn't call it adjustment of status. It calls it cancellation of removal and adjustment of status when it cross-references this provision in other provisions of the Immigration and Nationality Act. So what is the adjustment of status in the special rule cancellation title? What's it referring to? It's referring to the status that the applicant automatically reaches when cancellation of removal is granted. So when removal is canceled, when an application for special rule cancellation of removal is granted, the petitioner automatically reaches the status of an alien who has adjusted to lawful permanent residence. In contrast... It's just reflecting the automatic consequence of a grant of special rule cancellation. Precisely. Yes, exactly. In matter of YMP, the board also looked at federal regulations, 8 CFR section 1245.1F. And that federal regulation has been in place for over 50 years. The court recently addressed that regulation in an unpublished decision, Rivas v. Holder, which had cited the regulation favorably. And that explicitly implements section 245 to say that it shall be the sole method of requesting the exercise of discretion under 212H, among other things. Also, in matter of YMP, the board explained that special rule cancellation of removal does not include an implicit waiver under section 212H, because it already has an explicit waiver. And to have an explicit waiver and the implicit waiver would be redundant. The explicit waiver is the waiver that Mr. Fontes referred to under section 1229BB5, which in particular for the ground of inadmissibility arises out of domestic violence related crimes. Could we go back a second to the VAWA self-petitioner issue and the question of the effect, if any, of the decision when the petitioner sought standard cancellation and the determination was that he wasn't qualified because of the nature of the relationship. What should we do then? What's the significance of that from the government's perspective, that decision? There was two things at play. One was standard cancellation of removal, which was denied. And then he applied for special rule. But I think the one that you're referring to is the VAWA self-petition visa, which he did. And so the government's position is that because he was denied that visa, that forecloses his argument that he is an applicant for VAWA self-petition, which was his primary argument regarding the avenue by which he could get to... Right. So you're saying, first of all, the avenue is not available. Right. And if it were available, he couldn't use it because of the prior determination. And finally, as the board explained in matter of YMP, the ameliorative purpose of VAWA is already served by other things. For example, there's a very relaxed good moral character requirement. An applicant only needs to show three years rather than 10 in standard cancellation. There's a relaxed physical presence requirement. They only need to show, again, three years. And also, with adjustment of status, an alien has to establish that he or she is not inadmissible on any grounds, whereas with special rule cancellation of removal, they only need to show that they're not inadmissible on select grounds that primarily relate to crimes. I've now forgotten the specifics of this case. Is he affected by those? And would he qualify? The limitations on the adjustment of status, do they pertain to him, to this petitioner? Could you repeat the question again? Probably not, but he was just relating that there are different limitations on the different provisions, including limitations on, I guess it was a 212H waiver. Do those limitations apply to this petitioner? So he would, if he wanted to adjust status under Section 245, he would need to have a visa. In this case, if he remarries or something and gets a visa from another source, or if he gets a business-related visa, then he could adjust status. He would just have to show he was inadmissible. I'm sorry, he would have to show that he was admissible on all grounds, including the criminal-related ones, but he could use a 212H waiver in that context. Does that answer your question? I think it does. As I looked at the statute, I encountered a reference to what you were saying with regard to different provisions. The inadmissibility applies only to inadmissibility based on certain provisions, but I couldn't remember his particulars to understand whether he was felt within those provisions or not. So I think you have answered the question. I'll just have to go back and think about it. If the Court has no further questions, the government's position is that matter of YMP is a permissible construction of an ambiguous statute, and that the Court should deny this petition for review. Thank you. Rebuttal. Your Honor, as the government attorney pointed out, to us the key difference between a VAWA self-petitioner and a special rule cancellation or removal for battered spouses under VAWA is one's an affirmative, one's a defensive application. Now, if we look to other such cases, the applicant has its day in court. You can renew that application with the Court. Same with an I-751. Here in this case, if a VAWA self-petitioner, a group of battered spouses that Congress has sought to protect, if they file an I-360 with USCIS, they all go to the Vermont Service Center. They never get an interview. They never get interviewed by an officer. They never have their day in court. They never get to see anybody. If it's their day in court, the application, what we're arguing is the equivalent, is a special rule cancellation or removal for battered spouses. And that's why we're saying it's included in 101A51 subsection A. That's their day in court. Now, in this case, the respondent did file. It took about three years to get that denial. He had been in proceedings since 2001. These aren't the facts in this case, but if you have an applicant who's in removal proceedings and who has a judge who says, I can set this out for a couple months and I'll hear your 42B or your special rule cancellation or removal for battered spouses. Or you can file an I-360 that is going to take two, three years, and if you lose it because you don't get to talk to anybody, it may be on appeal for another couple years. That alien is not dictated by Congress by statutes that he has to file one or the other. In that situation, he could be a special rule cancellation of removal applicant, and he for A1A subsection 3, yet have never filed an I-360 petition, have never got a prima facie eligibility finding. I'm not sure what I'm supposed to take from this. What we're taking for is looking at the language in 101A51 that says qualified for, instead of saying that he was granted. Why do we make an independent decision if, in fact, in your client's case, the agency has made an adjudication and has concluded he was not qualified? I understand there may be a case where the adjudication hasn't occurred or something, but it's occurred for your client. Yes, and again, we point to the prima facie finding by the USCIS that says he met all the elements, and we look to the ACFR. That's sort of stopping history. I mean, you're asking us to say, because at one moment in time, he advanced a sufficient showing to have the matter adjudicated, then we don't look at the adjudication. What's the support for that notion of essentially putting blinders on and saying, all right, he got past the post, and now we're not going to look to see what happened after that. He did all he needed to do to then be in a qualified status for purposes of what we're... And again, we go back to this is, this protected group that Congress sought to protect, this is their day in court. Again, when they deny that, there's no interview, they don't see an immigration officer, they don't see anybody. Our argument is that the language is ambiguous enough in 101A51 that says qualified for. They don't get their day in court. Their day in court is with the special rule cancellation removal for battered spouses. That's jurisdiction over that lies solely with the EOIR. That's what they get to present. And what we're saying is those applications, although there are some minor differences, essentially they're protecting the same group. We're looking at battered spouses, people who have been subjected to battery and extreme cruelty by a U.S. citizen or LPR spouse. And that's why they're included in 101A51A as a VAWA self-petitioner. Was your client precluded in the current proceeding from arguing that he did in fact qualify as a self-petitioner, that the adjudication was incorrect? Because that would... Wouldn't that be a way out from under the order of removal? No, the immigration court, the EOIR, does not have jurisdiction to second-guess the specific I-360 petition. So were we precluded? The assertion was made in immigration court that he was a VAWA self-petitioner. Proof was shown to the court and it's on the record of the receipt notice, and I think six of the prima facie case findings and extensions were all filed with the court and are on record. But did we, once it was denied, was that argued and brought up again? I'm not sure if it was precluded. I think... If it wasn't, I mean, I hear what you're saying that you don't get your day in court, you never get to EOIR, you don't get to us on that issue, but I'm not sure that's true. If in fact your client argues the adjudication was incorrect, I'm not sure why that couldn't be brought up to the IJ. Apparently it was presented to the IJ, there was processing going on, but when the bad news came at the end, there wasn't an argument made to the IJ, well that adjudication was incorrect and I can't be removed because I properly qualify as a self-petitioner. If the argument wasn't made and could have been, then I don't know what we're talking about. Well, and again, I think of the government's brief at page six, they have footnote two, they cite to the jurisdiction. And again, the jurisdiction over the I-360 lies solely with the USCIS, and we do agree with that point. So to take that denial by the USCIS and go argue that in front of the immigration court, the judge doesn't have jurisdiction to hear that argument. And that's why we're saying if we're looking, Congress was looking to protect and give expansive measures, and they keep looking that they've consistently held the VAWA statutes have been enacted to reduce harsh results of immigration, and the rules should be interpretive in a ameliorative fashion. How can we say these people have to apply to the Vermont Service Center, never see an officer, never get their day in court, and it's a different application when they're actually placed in a removal proceedings and they get to finally present that before somebody, and that that's a different application. We're saying it's the same application. Now is it under a different section of law? Yes. But we're saying it's the same protected group, and that's what we submit. If you have no further questions, we have no other arguments. Thank you. We thank both counsel for your helpful arguments in this complicated case. The case just argued is under submission.
judges: Seeborg, Kleinfeld, Clifton